[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This petition first came to this Court by a pro se summons and complaint dated December 9, 1997 and returnable December 30, 1997, initiated by the Plaintiff claiming a dissolution of marriage only.
Automatic orders accompanied the complaint.
The Defendant appeared by counsel on March 25, 1998.
On April 22, 1998 a request for leave to amend the complaint with proposed amended complaint was filed by the pro se Plaintiff.
In the amended complaint, the prayer for relief requested a CT Page 1501 dissolution of marriage, a fair and equitable division of marital property and debts.
A financial affidavit accompanied the amended complaint.
Thereafter on June 11, 1998, the Plaintiff appeared pro se before the Court, Purtill, J., and the Court after hearing, granted a dissolution of marriage and other relief.
Thereafter on June 26, 1998, the Court, Solomon, J., granted a motion to open judgment of dissolution on grounds that there was a lack of proper notice to the Defendant and her counsel.
Thereafter on September 28, 1998, the Defendant filed an Answer to the Complaint and a Cross Complaint and in the cross complaint prayer for relief claimed a dissolution of marriage, alimony, equitable distribution of the marital estate and such other relief as appeared appropriate.
On November 3, 1998, the Plaintiff appeared by legal counsel.
The parties appeared before the Court with their respective counsel on January 20, 1999 and January 21, 1999 and were heard.
The Court makes the following findings of fact.
The Plaintiff and the Defendant, whose birth name was Mary E. Izzo, and whose name at the time of marriage was Mary E. Michalski, were united in marriage on May 20, 1995 in the Town of Old Lyme.
There are no children issue of this union.
Neither party is in the military or naval service of the United States.
The parties have each resided in Connecticut for more than one year prior to the bringing of the complaint.
Neither party receives welfare from the State or any town or municipality.
The Plaintiff, who was age 51 at the time of the marriage, is now age 55. CT Page 1502
The Defendant is age 54.
This is the second marriage for both parties.
The Plaintiff's education extended through two years of high school.
The Defendant graduated from high school.
The Plaintiff's first marriage lasted 17 years. Plaintiff had two children issue of his first marriage and was single for 12 years prior to the present union.
The Defendant has three grown children issue of her prior marriage.
After approximately 1-1/2 years into this marriage, the Defendant's daughter, Michelle, then age 22, moved into the residence of the Plaintiff and Defendant.
Michelle was pregnant at the time and remained in the home until 2-1/2 months after her child was born.
The Plaintiff offered the Defendant's daughter a separate living unit, but the offer was not accepted.
The Defendant owned a residence in South Windsor and the Plaintiff felt that finances were strained in that he was paying the mortgage on the Boston Post Road, Old Lyme property in which the parties resided, as well as assisting in paying the mortgage on the Defendant's South Windsor premises.
When the Defendant left the Old Lyme residence, she took all of the furnishings that the parties had acquired.
The Defendant was not employed at the time of the marriage.
The Plaintiff is a self-employed excavating contractor and does business as Swaney and Sons.
In his business, the Plaintiff hires sub-contractors and employees as necessary dependent on the nature of the job.
The Plaintiff met the Defendant in 1993 and the parties lived together briefly before the marriage. CT Page 1503
After the marriage the Plaintiff allowed the Defendant to write out and issue checks on the business checking account.
At the time of the marriage the Plaintiff owed monies to the Internal Revenue Service (IRS) for a number of years including 1992, 1993 and 1994.
Plaintiff had financial problems due to trying to keep current payments on machinery and equipment.
Plaintiff's accountant bookkeeper was Donna Keller.
At the time of the marriage, the Plaintiff owned two vehicles, a Buick and a Cadillac.
One of the cars was totaled by the Defendant's son.
The Plaintiff assisted the Defendant in acquiring a 1994 Jeep Cherokee motor vehicle from Falvey's Dealership and traded in a vehicle he owned as part payment.
The trade-in allowance was $6,400.00.
While the Defendant's daughter Michelle resided with the parties, the Plaintiff assisted Michelle in acquiring a 1989 Chevrolet vehicle for her.
The Defendant had stopped working two weeks before the marriage.
After the marriage, the Defendant started a business known as Errand Express, but the business failed.
About six months after the marriage, the Defendant secured a position at the Griswold Inn in Essex as a waitress.
Subsequently, the Defendant left the Griswold Inn and attended a course sponsored by the Mohegan Sun Casino to become a dealer, a position she still holds.
During the course of the marriage the Defendant would, from the business account, make out checks to herself to cash.
As merely representative of the issuance of checks by the CT Page 1504 Defendant on the Citizen's Bank Swaney and Sons account to herself or to cash see the following from Exhibit F, Exhibit G and Exhibit H.
 Review of Exhibits 1995 Exhibit F
Ck #6302 1-8-95 Citizen's Bank Mary Michalski $ 500.00 #6311 1-21-95 Mary Michalski $ 500.00 #6344 3-12-95 Mary Michalski $1,000.00 #6417 7-6-95 Mary Swaney $ 250.00 #6420 7-10-95 Mary S $ 100.00 #6427 7-24-95 Mary S $1,500.00 #6430 7-28-95 Mary S $ 300.00 #6447 8-4-95 Cash/Endorsed Mary S $ 400.00 #6449 8-11-95 Cash/Endorsed Mary S $1,500.00 #6456 8-25-95 Cash/Endorsed Mary S $ 500.00 #6460 9-5-95 Cash/Endorsed Mary S $ 600.00 #6468 9-12-95 Cash/Endorsed Mary S $ 100.00 #6473 9-18-95 Mary S $ 50.00 #6477 9-21-95 Mary S $ 150.00 #6478 9-21-95 Cash/Endorsed Mary S $3,500.00 #6490 10-10-95 Mary S $1,400.00 #6518 11-2-95 Mary S $ 900.00 #6519 11-9-95 Mary S $ 300.00 #6555 Mary S. $ 800.00
 Exhibit G 1996 Swaney Son Acct.
The following are checks made out to Mary E. Swaney and signed by her on Citizens bank $2,000.00 2-13-96
 #6570 $ 200.00 #6656 $200.00 #6590 $1,250.00 #6673 $400.00 #6613 $ 200.00 #6682 $450.00 #6618 $ 500.00 Cash #6715 $250.00 #6635 $ 650.00 $6716 $450.00
 Exhibit H 1997
#6954 $1,500.00 Cash/Endorsed M.S. CT Page 1505
The Defendant's bank while in Old Lyme, was the Maritime Bank.
Defendant's present bank is Manchester Savings.
During the period January 8, 1995 to September 27, 1997, the Defendant wrote out checks to herself, cash or for mortgage payments while she owned the South Windsor home totaling $21,600.00.
The Defendant left the Old Lyme marital home during the Labor Day weekend 1997.
The Defendant would write out checks on the Swaney and Sons account and deposit them to her account.
For a time the Defendant received Workmen's Compensation payments.
The Defendant owed $3,000.00 on her Visa account at the time of the marriage.
The Defendant made mortgage payments on her South Windsor residence during the marriage amounting to $15,668.38, some of the funds coming from checks written on the Swaney Sons account.
The Plaintiff assisted the Defendant regarding the South Windsor property by paying part of the utilities and water bills.
Plaintiff has an office in his home.
The Plaintiff at the end of the day would often remain at his shop and have a few drinks or beers.
The Plaintiff has a lady friend who now resides with him on and off, but who has her own place in Hartford.
The Plaintiff d/b/a Swaney and Sons is a sole proprietorship.
The Plaintiff recently refinanced the mortgage debt on the Old Lyme property in the form of a 30-year mortgage in order to make the payments more manageable. CT Page 1506
At one time the Defendant worked at a store known as Ryan's Deli earning $400.00 ± weekly.
The Defendant's South Windsor property was sold in 1996 for $115,000.00 and the net proceeds to the Defendant after paying mortgage, taxes, costs, etc., was $32,000.00.
The South Windsor property, which was a single-family residence, was owned by the Defendant for eight years. The monthly mortgage payments on the South Windsor home were $822.30.
The Defendant does not believe that her daughter contributed to the marital breakdown but acknowledges that on one occasion her daughter was verbally profane to the Plaintiff.
The Defendant represents that she owes her brother $4,000.00.
In March 1998 the Defendant purchased a 1997 Pontiac Grand Am motor vehicle but claims the vehicle belongs to her daughter.
The Defendant now resides by herself in Manchester.
By her testimony the Defendant indicated that her income was as follows:
1995: $11,165.00
1996: $16,263.00
1997: $32,044.00
1998: income estimated at $33,000 — $34,000.00
The parties separated on September 1, 1997 according to the Defendant.
Checks written by the Defendant out of her account were as follows:
1995: $19,904.00
1996: $25,541.00
1997: $20,240.00 CT Page 1507
The checks were drawn for the following purposes:
In 1995 —
$6,061.00 as to the Old Lyme property and mortgage
$4,924.00 as to the South Windsor property
$3,480.00 Jeep payments
$ 676.00 miscellaneous
In 1996 —
$7,413.00 for the Old Lyme property
$7,810.00 for the South Windsor property
$6,941.00 Jeep payments
$ 291.00 miscellaneous
$300.00 cash
In 1997 —
$3,589.00 for the Old Lyme property
$4,991.00 to Bay Bank re: Jeep
$3,920.00 Chase Visa
$ 200.00 Cash
The Plaintiff had no separate credit card of his own.
There was a jointly held Visa card.
Some of the Plaintiff's business was done on a cash basis including snowplowing.
According to the testimony of the Defendant, she sold her South Windsor property to assist the Plaintiff in forestalling the IRS from seizing his business and/or equipment in Old Lyme, where he had conducted business for 30 years. CT Page 1508
According to the Defendant's testimony at the time of the marriage, the Plaintiff owed $70,000 ± to the IRS, $50,000.00 to one Ron Swaney, $11,000.00 to Deep River Oil Co. and $16,000.00 to the Town of Old Lyme for taxes.
The parties, during the marriage, filed separate tax returns.
The Defendant, when she left the marital residence, took those items which she brought to the marriage.
At the time of the marriage the parties honeymooned at Cape Cod and the following year went to Florida for a vacation.
On occasion, the Plaintiff, when he returned home in the evening, would give evidence of strong drink and on one occasion pushed the Defendant into a counter.
The authorities were called, but no arrest was made.
The Defendant on that occasion left the home and went to stay with her brother and returned the next day.
When the Defendant left the marital home, she took a check, which she made out to Cash for $1,500.00 to try and use for a security deposit on an apartment for herself. The Plaintiff stopped payment on the check and the Defendant was required to resort to her small retirement account of $700.00.
From the exhibits and financial affidavits of the parties, the Court makes the following findings and observations.
Defendant's Exhibit 1 verifies the Defendant's claim that she made available to the Plaintiff the sum of $30,000.00 to pay off or hold at bay the IRS by virtue of her check in that amount dated August 13, 1996, check #228 drawn on the Maritime Bank.
The Defendant's financial affidavit reflects:
weekly gross income from the casino as a dealer of $676.14
deductions for State and federal taxes, FICA and medicare of $193.00
weekly net: $483.14 CT Page 1509
weekly expenses: $482.42
debts, including attorney's fees, are $29,296.00
The Defendant owns no real estate.
The Defendant has two motor vehicles; a 1994 Jeep Cherokee valued at $15,000.00, on which $7,728.00 is due, and a 1997 Pontiac valued at $12,000.00, on which $12,850.00 is due.
The Defendant has $300.00 in her checking account at Manchester Savings Bank.
The Defendant has no other assets.
The Plaintiff's financial affidavit reflects weekly income from self-employment
gross $559.00
deductions, taxes, etc., $147.00
net $412.00
other income — rental $100.00 weekly
weekly expense $615.00
debts including IRS, counsel and others $39,086.00
real estate at 129, 133 Boston Post Road, Old Lyme valued at $208,157.00
mortgage debt $149,300.00, equity $130,857.00
vehicles $3,200.00
boat, trailer and air compressor $1,550.00
checking account balance $427.00
machinery and equipment $19,684.00
See Defendant's Exhibit 5 for verification of the terms and CT Page 1510 conditions of the sale of Defendant's former home in South Windsor.
See Defendant's Exhibit 4, financial affidavit of the Plaintiff dated December 23, 1998 showing a weekly gross of $829.00 and a net of $603.00.
From the tax returns of the parties the Court finds:
as to the Plaintiff from Plaintiff's exhibit 2 for calendar 1995
business income $58,121.17
gross receipts from his business schedule C $154,293.00
Plaintiff's Exhibit AA
Business income $39,416 calendar 1996
gross receipts from his business $131,528.00 from schedule C
Plaintiff's Exhibit BB
Business income $43,105.00
gross receipts from his business $145,081.00
As to the Defendant's tax returns for calendar years:
1995 — Plaintiff's Exhibit W — Income $11,765.60
1996 — Plaintiff's Exhibit X — Income $16,263.01
1997 — Plaintiff's Exhibit Y — Income $32,044.13
There were literally hundreds of exhibits including copies of checks, wage statements, ledger accounts, bank statements, checking account records, deposit slips with which the Court was inundated primarily on the Plaintiff's side. See Plaintiff's Exhibits A, B, C, D, E, F, G, H, M, N, Q, O, R, S, T, and CC.
 Discussion
This is a marriage of about three years and a few months CT Page 1511 duration.
This is the second marriage for each party.
As noted, there are no children.
The Plaintiff feels that stresses were introduced into the union when the Defendant's pregnant daughter moved in with them.
The Defendant attributes the breakdown to the Plaintiff's late evening hours at his place of business, strong drink and some abuse.
The Court is satisfied that the action of the Defendant in writing out checks on the business account was sanctioned by the Plaintiff and, in any event, beneficial to both parties as concerns the payment of bills and living expenses.
The Defendant during a substantial portion of the marriage was employed and contributed to the financial stability of the family.
The Plaintiff's substantial difficulties with the IRS were not of the Defendant's making and in any event the Defendant rescused the Plaintiff and his business by paying the IRS $30,000.00, which represented practically all the net proceeds of the sale of her South Windsor home.
The Defendant has assets totaling $7,571.10 and the Plaintiff $176,418.00.
The Defendant is fortunate to have the position that she holds at the casino but it is unlikely that her earnings will substantially increase.
The Plaintiff has the potential, even with the debt he has, as an experienced long-time excavator to make much more than the Defendant.
 The Law
The Court has considered all of the statutes which apply in matters of this nature which include without limitation C.G.S. § 46b-62 regarding attorney's fees and C.G.S. § 46b-82
regarding alimony. CT Page 1512
The Court has considered all of the applicable case law that govern the matter.
The Court has considered the testimony of the parties, their candor or lack thereof and all exhibits and the arguments of counsel.
In considering the issue of alimony, the Court has considered the length of the marriage, the cause of the dissolution, the age, health, station, occupation, employability, estate and needs of the parties.
The Court has considered the standards of living of the parties.
The Court enters the following orders.
The Plaintiff may retain his interest and ownership of the real estate known as 133-1 and 129 Boston Post Road, Old Lyme and continue to be solely responsible for the mortgage debt thereon.
The Court notes that the title to this property is solely in the Plaintiff's name.
The Plaintiff, by agreement of the parties, may retain the 13' Boston Whaler boat and trailer, the air compressor and may retain the yellow Labrador Retriever dog named "Zac".
The Plaintiff may retain his 1982 Chevrolet pick-up truck and the 1978 Mercedes motor vehicle and the 1983 Cadillac with the blown engine.
The Plaintiff may retain the machinery and equipment which he possesses incident to his excavating business.
The Defendant may retain ownership of the 1994 Jeep motor vehicle and be responsible for any remaining payments thereon and retain the 1997 Pontiac motor vehicle and be responsible for any payments thereon.
The Defendant may retain all wedding gifts and personal property already removed by her from the marital home.
The Plaintiff may retain the furnishings presently remaining CT Page 1513 in the former marital residence.
Each party shall be responsible for the debts shown on their financial affidavits.
The Plaintiff shall pay the Defendant the sum of $150.00 a week for the term of one year as periodic alimony.
The amount and the term are non-modifiable.
The alimony will terminate earlier on the death, remarriage or cohabitation by the Defendant with a non-related male.
Inasmuch as the Defendant in effect rescued the Plaintiff and his business from the claims by the IRS, which the Defendant in no manner contributed to with her providing $30,000.00 to the IRS on the Plaintiff's behalf,
The Court orders that the Plaintiff repay the Defendant the amount shown on the check, to wit $30,000.00, within 24 months, the same to be secured by a lien on the Plaintiff's real estate, interest free. The Plaintiff seems to be inclined to the view that because the Defendant wrote out checks, which helped her to keep and maintain the South Windsor home, that he should get a credit for these funds balancing out the Defendant's helping him with the $30,000.00 check to, in part, pay off the IRS.
The answer to that claim is that by keeping the mortgage current on the South Windsor property, the Defendant was able to help the Plaintiff by being able to give him the $30,000.00 to fend off the IRS rather than lose the South Windsor property for nonpayment of the mortgage and then be unable to help him. In addition, a portion of what the Defendant spent or wrote out was mutually beneficial to both in the form of living expenses.
The Court is mindful of the disparity of the assets of the parties in this admittedly brief marriage re: the Plaintiff assets totaling $176,418.00, the Defendant $7,510.00.
The Plaintiff shall pay the sum of $1,500.00 to the Defendant's counsel as attorney's fee within six months, Defendant's counsel having received no compensation to date.
In accordance with her request, the Defendant may resume her maiden name of Izzo. CT Page 1514
The marriage is dissolved on the grounds of irretrievable breakdown and the parties are declared to be single and unmarried. C.G.S. § 46b-40c.
___________________________ Austin, JTR